# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **LOUISIANA HEALTH SERVICE & INDEMNITY COMPANY, ET AL.,** Plaintiffs | **CIVIL ACTION** |
| **VERSUS** | **NO. 17-4171** |
| **CENTER FOR RESTORATIVE BREAST SURGERY, LLC, ET AL.,** Defendants | **SECTION: "E" (5)** |

## ORDER AND REASONS

Before the Court is a motion for preliminary and permanent injunctive relief filed by Louisiana Health Service & Indemnity Company d/b/a Blue Cross and Blue Shield of Louisiana and HMO Louisiana, Inc. ("Blue Cross Louisiana").[1] The motion is opposed.[2] For the following reasons, the motion is **GRANTED IN PART** and **DENIED IN PART**.

## BACKGROUND

This Court's lengthy history with this matter began when, on April 6, 2010, the Center for Restorative Breast Surgery, L.L.C. and St. Charles Surgical Hospital, filed suit in the Civil District Court for the Parish of Orleans, State of Louisiana. Blue Cross Louisiana removed the case to this Court on April 12, 2011 ("*Blue Cross* I").[3]

The members of the Center for Restorative Breast Surgery, L.L.C. ("Center") are surgeons who perform post-mastectomy breast reconstruction medical services.[4] The St. Charles Surgical Hospital ("Hospital") is a specialty surgical center where the physicians affiliated with the Center perform the surgeries.[5] The Center and the Hospital are out-of-

---

[1] R. Doc. 8.
[2] R. Doc. 13.
[3] *Center For Restorative Breast Surgery, L.L.C. et al v. Blue Cross Blue Shield of Louisiana et al.*, Civil Action Number 11-806, R. Doc. 1.
[4] *Blue Cross* I, R. Doc. 308 at ¶ 83.
[5] *Id.* at ¶ 91. The Court will refer to the Center and the Hospital collectively as "the *Blue Cross* I Plaintiffs."

1

network healthcare providers with respect to all *Blue Cross* I defendants. The *Blue Cross* I Plaintiffs provided services to patients covered under insurance policies issued or administered by various Blue Cross defendants.[6]

Final judgment was entered in *Blue Cross* I on March 31, 2017,[7] and the *Blue Cross* I Plaintiffs filed an appeal on April 21, 2017.[8]

On February 3, 2017, the *Blue Cross* I Plaintiffs filed suit in the Civil District Court for the Parish of Orleans, State of Louisiana, against Blue Cross Louisiana ("*Blue Cross* II").[9] The *Blue Cross* I Plaintiffs make claims in *Blue Cross* II on four counts: (1) breach of contract; (2) detrimental reliance; (3) negligent misrepresentation; and (4) fraud.

On April 28, 2017, Blue Cross Louisiana filed suit in this Court against the *Blue Cross* I Plaintiffs under the All Writs Act[10] and the Anti-Injunction Act.[11] Blue Cross Louisiana seeks an injunction against the litigation filed by the *Blue Cross* I Plaintiffs in *Blue Cross* II.

**LAW AND ANALYSIS**

I. **Jurisdiction**

Ancillary jurisdiction attaches to Blue Cross Louisiana's action for injunctive relief if this Court had jurisdiction over *Blue Cross* I.[12] "[A] federal district court can exercise ancillary jurisdiction over a second action in order to secure or preserve the fruits and

---

[6] *Id.* at ¶ 92; R. Doc. 458-1 at 9.
[7] *Blue Cross* I, R. Doc. 731.
[8] *Blue Cross* I, R. Doc. 746.
[9] *St. Charles Surgical Hospital, LLC, et al. v. Louisiana Health Service & Indemnity Company d/b/a Blue Cross and Blue Shield of Louisiana*, Civil District Court for the Parish of New Orleans, State of Louisiana, Docket No. 2017-01095.
[10] 28 U.S.C. § 1651.
[11] 28 U.S.C. § 2283; R. Doc. 1.
[12] *Regions Bank of Louisiana v. Rivet*, 224 F.3d 483, 493 (5th Cir. 2000) ("[J]urisdiction is based on the original case . . . . It is not necessary for the district court to have jurisdiction over the second suit as an original action.").

advantages of a judgment or decree rendered by that court in a prior action."[13] In *Blue Cross* I, this Court had federal question subject matter jurisdiction over the *Blue Cross* I Plaintiffs' claims arising under ERISA, and supplemental jurisdiction over the *Blue Cross* I Plaintiffs' state-law claims. Accordingly, the Court had jurisdiction over the original federal proceeding, and has ancillary jurisdiction over the instant action.

II. **The Relitigation Exception of the Anti-Injunction Act**

Under the Anti-Injunction Act, "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."[14] The exceptions are to be interpreted narrowly and are "not to be enlarged by loose statutory construction."[15] Further, "[a]ny doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy."[16]

Blue Cross Louisiana argues the last of the three exceptions—the "relitigation exception"—applies in this case, contending the doctrines of res judicata and collateral estoppel apply. The relitigation exception permits an injunction to prevent state litigation of a claim or issue "that was previously presented to and decided by the federal court."[17] The exception is "founded in the well-recognized concepts of res judicata and collateral estoppel," but is "strict and narrow," requiring that "the claims or issues which the federal injunction insulates from litigation in state proceedings actually have been decided by the

---

[13] *Royal Ins. Co. v. Quinn–L Capital Corp.*, 960 F.2d 1286, 1292 (5th Cir. 1992) (noting that jurisdiction exists "even where the federal district court would not have jurisdiction over the second action if it had been brought as an original suit").
[14] 28 U.S.C. § 2283.
[15] *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 146 (1988) (citations omitted).
[16] *Zurich Am. Ins. Co. v. Superior Court for State of California*, 326 F.3d 816, 824 (7th Cir. 2002).
[17] *Chick Kam Choo*, 486 U.S. at 147.

federal court."[18] A federal district court is permitted, but not mandated, to enjoin duplicative state court proceedings.[19]

The Fifth Circuit employs a four-part test to determine whether the relitigation exception is applicable when urged on the basis of res judicata or collateral estoppel:[20]

(1) The parties in the later action must be identical to (or at least in privity with) the parties in a prior action;

(2) The judgment in the prior action must have been rendered by a court of competent jurisdiction;

(3) The prior action must have concluded with a final judgment on the merits; and

(4) The same claim or cause of action must be involved in both suits.[21]

At issue in this matter is the fourth prong—whether both suits involve the same claims or causes of action.[22] The relitigation exception requires that the claims or issues the federal injunction seeks to insulate from litigation in state proceedings "actually have been decided by the federal court."[23] The Fifth Circuit employs a "transactional test," "asking whether the two claims are based on the same nucleus of operative fact."[24] "In

---

[18] *Id.*
[19] *Id.* at 151.
[20] Courts are beginning to address the broad "res judicata" phrase as referring to both claim preclusion and issue preclusion. *See* 18A CHARLES A. WRIGHT & ARTHUR D. MILLER, FEDERAL PRACTICE AND PROCEDURE § 4402 (3d ed. 2012); *see also St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 436 (5th Cir. 2000) ("The rules of res judicata encompass two separate but linked preclusive doctrines: (1) true res judicata or claim preclusion and (2) collateral estoppel or issue preclusion.").
[21] *N.Y. Life Ins. Co. v. Gillispie*, 203 F.3d 384, 387 (5th Cir. 2000).
[22] The *Blue Cross* I Plaintiffs do not dispute that all the parties in *Blue Cross* II are parties in *Blue Cross* I, that this Court had jurisdiction to issue its judgment in *Blue Cross* I, or that *Blue Cross* I ended with a final judgment on the merits. *See Blue Cross* I, R. Doc. 731. Although the *Blue Cross* I Plaintiffs have filed a notice of appeal, the Court's judgment remains final for the purposes of res judicata. *Comer v. Murphy Oil USA, Inc.*, 718 F.3d 460, 467 (5th Cir. 2013) (citing 18A CHARLES A. WRIGHT & ARTHUR D. MILLER, FEDERAL PRACTICE AND PROCEDURE § 4427 (2d ed. 2012) ("[R]es judicata ordinarily attaches to a final lower-court judgment even though an appeal has been taken and remains undecided.")).
[23] *Chick Kam Choo*, 486 U.S. at 148.
[24] *Blanchard 1986, LTD v. Park Plantation, LLC*, 553 F.3d 405, 408 n.12 (5th Cir. 2008) (citing *Gillispie*, 203 F.3d at 387; *Assurance Co. of Am. v. Kirkland*, 312 F.3d 186, 189 n.8 (5th Cir. 2002)); *Vines v. Univ. of La. at Monroe*, 398 F.3d 700, 709 (5th Cir. 2005).

4

evaluating the res judicata effect of a prior claim on a subsequent one, the transactional test does not inquire whether the same *evidence* has been presented in support of the two claims, but rather asks *whether the same key facts are at issue in both of them.*[25] The Fifth Circuit has held that the preclusive effect of the transactional test "potentially extends beyond claims actually litigated to claims that *could have been litigated.*"[26] In this case, however, the issue of whether the claims for breach of oral contract, detrimental reliance, negligent misrepresentation, and fraud made in *Blue Cross* II were actually litigated or could have been litigated in *Blue Cross* I is irrelevant.[27] Three out of four of these claims were actually decided in *Blue Cross* I, and the fourth, fraud, was voluntarily dismissed.[28]

"In determining which issues have been actually litigated, the federal court is free to go beyond the judgment and may examine the pleadings and the evidence in the prior action. If a question of fact is put in issue by the pleadings, is submitted to the jury or other trier of facts for its determination, and is determined, then that question of fact has been actually litigated."[29] As explained below, the *Blue Cross* I Plaintiffs' claims in *Blue Cross* II for breach of contract, detrimental reliance, and negligent misrepresentation have been actually decided by this Court in *Blue Cross* I. As a result, the fourth prong of

---

[25] *Gillispie*, 203 F.3d at 387 (emphasis in original).
[26] *Blanchard*, 553 F.3d at 408 n.12 (emphasis added).
[27] On November 12, 2014, the Court allowed the *Blue Cross* I Plaintiffs to file their Fifth Amended Complaint. The Court stated "After the fifth amended complaint has been filed, the only new claimants who may be added to the complaint are ones whose claims do not raise new causes of action and whose claims are against Defendants currently named or added in the fifth amended complaint." R. Doc. 304. The Court did not preclude the *Blue Cross* I Plaintiffs from seeking additional damages for services provided to patients based on existing causes of action, such as breach of oral contract, detrimental reliance, negligent misrepresentation, or fraud. In *Blue Cross* II, the *Blue Cross* I Plaintiffs seek damages acts that occurred "from April 12, 2011 to through the present," based on the same causes of action decided in *Blue Cross* I.
[28] The *Blue Cross* I Plaintiffs' assertion that *Blue Cross* II "excludes any claims and causes of action that were presented and actually decided in [*Blue Cross* I]" does not resolve the issues presented to this Court.
[29] *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 448 (5th Cir. 2000) (citing *Santopadre v. Pelican Homestead & Sav. Ass'n*, 937 F.2d 268, 273 (5th Cir. 1991)).

the Fifth Circuit's four-part test is satisfied, and the relitigation exception is applicable to these three claims or causes of action. The Court must now determine the appropriate scope of injunctive relief.

III. **The *Blue Cross* I Plaintiffs' Claims in *Blue Cross* II**

The *Blue Cross* I Plaintiffs filed a petition in *Blue Cross* II, alleging Blue Cross Louisiana failed to "pay [the *Blue Cross* I] Plaintiffs an appropriate amount of money for medical services provided by [the *Blue Cross* I] Plaintiffs, which Defendants agreed to pay."[30] The *Blue Cross* I Plaintiffs further allege "Defendants required that [the *Blue Cross* I] Plaintiffs verify Defendants' agreement or offer to pay, and the percentage of the bill Defendants would pay by referring to Defendants' web portal, iLinkBlue."[31] The *Blue Cross* I Plaintiffs allege their claims arise out of the statements made on verification telephone calls made to Blue Cross Louisiana and representations made on Blue Cross Louisiana's web portal, iLinkBlue.[32] The *Blue Cross* I Plaintiffs' claims in *Blue Cross* II consist of four counts: (1) breach of contract; (2) detrimental reliance; (3) negligent misrepresentation; and (4) fraud.[33]

  a. Breach of Contract

In *Blue Cross* II, the *Blue Cross* I Plaintiffs allege contracts were formed between them and Blue Cross Louisiana.[34] The *Blue Cross* I Plaintiffs allege these contracts were formed when "Defendants communicate[d] to [the *Blue Cross* I] Plaintiffs the percentage

---

[30] *See* R. Doc. 8-5 at 1, ¶ 1.
[31] *Id.* at 3, ¶ 18.
[32] *See, e.g., id.* at 6, ¶¶ 38(C), 38(E), 38(J).
[33] R. Doc. 8-5. The Court is aware the *Blue Cross* I Plaintiffs have filed a motion for leave to file their first amended petition in *Blue Cross* II. The amended petition, however, does nothing to materially change the arguments presented to this Court for the purposes of Blue Cross Louisiana's request for injunctive relief. As a result, the Court will reference the *Blue Cross* I Plaintiffs' original petition. R. Doc. 8-5.
[34] R. Doc. 8-5 at 5, ¶ 38 ("Once an offer is made, consent to a contract need not be expressed in words, but may be implied by actions of the parties, as it was here each and every time from April 12, 2011 through the present.").

6

of [the *Blue Cross* I] Plaintiffs' medical bill Defendants agree[d] to pay for services rendered to Defendants' customers over the telephone, and then through iLinkBlue."[35] The *Blue Cross* I Plaintiffs further allege "Defendants wrote to [the *Blue Cross* I] Plaintiffs, expressly instructing [the *Blue Cross* I] Plaintiffs to refer to the iLinkBlue web portal for any information [the *Blue Cross* I] Plaintiffs sought from Defendants relating to monetary payments"[36] and "[the *Blue Cross* I] Plaintiffs verified Defendants' offer and terms through telephone calls, and thereafter, through viewing the offers on Defendants' iLinkBlue website."[37]

In *Blue Cross* I, the Fifth Amended Complaint alleged "[t]hrough [] verifications and pre-authorization of the procedures, the respective Defendants and [the *Blue Cross* I] Plaintiffs entered into bilateral onerous commutative *oral* contracts whereby [the *Blue Cross* I] Plaintiffs would provide their agreed upon covered and pre-authorized services at a predetermined rate that reflect the benefits provided by their subscribers' respective plans."[38] The *Blue Cross* I Plaintiffs further alleged "[s]aid oral contracts created through the verification of benefits process were made directly with the respective Blue Cross Defendants, creating an independent legal duty on the part of said Defendants to tender the represented percentage to the Center and Hospital, based on the representation."[39]

The Court granted summary judgment in *Blue Cross* I with respect to the *Blue Cross* I Plaintiffs' breach of oral contract claim, finding the *Blue Cross* I Plaintiffs failed to introduce evidence of corroborating circumstances sufficient to establish an oral

---

[35] *Id.* at ¶ 38(C).
[36] *Id.* at ¶ 38(D).
[37] *Id.* at ¶ 38(E).
[38] *Blue Cross* I, R. Doc. 308 at ¶ 224 (emphasis added).
[39] *Id.* at ¶ 225.

7

contract worth over $500.⁴⁰ The Court has actually decided that the *Blue Cross* I Plaintiffs may not recover for breach of oral contract worth over $500 based on the verification of benefits process.

It is unclear whether the *Blue Cross* I Plaintiffs' allegations in *Blue Cross* II relate to oral contracts, written contracts, or both.⁴¹ To the extent the *Blue Cross* I Plaintiffs seek to recover for breach of oral contract worth over $500 based on the verification of benefits process, such a cause of action has been actually decided by this Court. To the extent the *Blue Cross* I Plaintiffs make a claim for breach of oral contract in *Blue Cross* II, that claim arises out of the same nucleus of operative fact as their claim in *Blue Cross* I. As a result, the *Blue Cross* I Plaintiffs are enjoined from pursuing any claim in *Blue Cross* II relating to an oral contract worth over $500 between them and Blue Cross Louisiana based on the verification of benefits process.

b. Detrimental Reliance

In *Blue Cross* II, the *Blue Cross* I Plaintiffs allege "Defendants communicated to [the *Blue Cross* I] Plaintiffs via telephone and iLinkBlue web portal that Defendants agreed or offered to pay for . . . medical services" and "[the *Blue Cross* I] Plaintiffs reasonably relied, to their detriment, on representations and statements made by Defendants as to the existence and extent of Defendants' offer or agreement to pay for

---

⁴⁰ *Blue Cross* I, R. Doc. 566. Louisiana Civil Code article 1846 requires that, when the plaintiff alleges the existence of an oral contract of which "the price or value is in excess of five hundred dollars, the contract must be proved by at least one witness and other corroborating circumstances." LA. CIV. CODE art. 1846; s*ee also Suire v. Lafayette City-Par. Consol. Gov't*, 2004-1459 (La. 4/12/05), 907 So. 2d 37, 58. The other corroboration must come from a source other than the plaintiff, and it may not result from the plaintiff's own actions. *Id.*; *Kilpatrick v. Kilpatrick*, 27,241 (La. App. 2 Cir. 8/23/95), 660 So. 2d 182, 185, *writ denied*, 95-2579 (La. 12/15/95), 664 So. 2d 444. The Blue Cross I Plaintiffs do not dispute that the value of the alleged oral contracts exceeded $500. *Blue Cross* I, R. Doc. 566 at 27.
⁴¹ The Plaintiff's petition in *Blue Cross* II states "Plaintiffs relied upon, and were entitled to rely upon, to their detriment, Defendants' web portal and other statements made by Defendants, *whether oral or otherwise*, regarding Defendants' agreement or offer to pay . . . ." R. Doc. 8-5 at 3, ¶ 23.

[the *Blue Cross* I] Plaintiffs' provision of medical services to Defendants' customers."[42]

In the Fifth Amended Complaint in *Blue Cross* I, the *Blue Cross* I Plaintiffs allege they "contacted the respective Defendant and with that Defendant's authorization received a representation that the proposed services were covered and preauthorized and that in exchange for said services, reimbursement . . . would be forthcoming."[43] The *Blue Cross* I Plaintiffs allege they detrimentally relied on these representations because they "based their decisions to provide [] services on Defendants' representations of payment."[44]

The Court granted summary judgment in *Blue Cross* I on the *Blue Cross* I Plaintiffs' detrimental reliance claim.[45] The Court found there was no representation—and therefore could be no detrimental reliance—for those patients for whom the *Blue Cross* I Plaintiffs did not attempt to verify the eligibility and benefits by a telephone verification call or visiting the iLinkBlue web portal.[46] Similarly, the Court found Blue Cross Louisiana made no promise to pay a certain amount for services rendered by the *Blue Cross* I Plaintiffs on iLinkBlue, as the verification page contains no claim-specific payment information, and as a result there was no representation and there could be no detrimental reliance.[47] With respect to any patient for whom the *Blue Cross* I Plaintiffs made a verification telephone call to Blue Cross Louisiana, the Court found the *Blue Cross* I Plaintiffs could not have reasonably relied upon the representations made in the calls because disclaimers saying there was "no guarantee of payment" were played at the beginning of each call, and the

---

[42] R. Doc. 8-5 at 8, ¶ 42.
[43] *Blue Cross* I, R. Doc. 308 at 28, ¶ 210.
[44] *Id.* at ¶ 215.
[45] *Blue Cross* I, R. Doc. 585.
[46] *Id.* at 20.
[47] *Id.* at 21.

9

*Blue Cross* I Plaintiffs did not request further assurance or clarification about the amount of the allowable charge.[48] Because the Court has actually decided that the *Blue Cross* I Plaintiffs cannot recover under this theory, and the *Blue Cross* I Plaintiffs' claims in *Blue Cross* II arise from the same nucleus of operative fact as their claims in *Blue Cross* I, the *Blue Cross* I Plaintiffs are enjoined from pursuing any claims under the theory of detrimental reliance for which: (1) there was no attempt to verify the patient's eligibility and benefits through a verification telephone call or visit to the iLinkBlue website; (2) there was an attempt to verify the patient's eligibility and benefits through iLinkBlue, but the verification page did not provide the amount the insurer will pay for a specific procedure; or (3) there was an attempt to verify the patient's eligibility and benefits through a verification telephone call, but a disclaimer stating there was "no guarantee of payment" was played at the beginning of the call, and the *Blue Cross* I Plaintiffs did not request further assurance or clarification about the amount of the allowable charge.

    c. <u>Negligent Misrepresentation</u>

In *Blue Cross* II, the *Blue Cross* I Plaintiffs allege Blue Cross Louisiana has "a legal duty to supply correct information regarding the existence and extent to which Defendants have agreed or offered to pay to the *Blue Cross* I Plaintiffs for the provision of medical services."[49] The *Blue Cross* I Plaintiffs further allege in *Blue Cross* II they "relied, to their detriment, on representations and statements made by Defendants as to the existence and extent of payment by Defendants for [the *Blue Cross* I] Plaintiffs' provision of medical services to Defendants' customers."[50] The *Blue Cross* I Plaintiffs allege these representations were made on Blue Cross Louisiana's web portal, iLinkBlue,

---

[48] *Id.* at 22.
[49] R. Doc. 8-5 at 10, ¶ 62.
[50] *Id.* at ¶ 61.

10

or, presumably, through verification telephone calls.[51]

In the Fifth Amended Complaint in *Blue Cross* I, the *Blue Cross* I Plaintiffs alleged "Defendants breached [their] duty to [the *Blue Cross* I] Plaintiffs directly by providing misleading information about the benefits to be paid after authorizing the procedure to be performed."[52] In their oppositions to the motions for summary judgment, the *Blue Cross* I Plaintiffs made clear that the alleged misrepresentations occurred on the verification telephone calls and the iLinkBlue coverage summaries.[53]

In an order issued on September 19, 2016, the Court granted summary judgment in *Blue Cross* I on the *Blue Cross* I Plaintiffs' negligent misrepresentation claim to the extent the *Blue Cross* I Plaintiffs made no attempt to verify a patient's coverage and benefits.[54] The Court also granted summary judgment to the extent the *Blue Cross* I Plaintiffs verified eligibility through iLinkBlue, finding the coverage summaries on iLinkBlue did not state the allowable amount or any other procedure-specific information, and therefore no representation with respect to the allowable amount was made.[55]

On March 31, 2017, the Court granted summary judgment on the *Blue Cross* I Plaintiffs' negligent misrepresentation claim to the extent a verification telephone call was

---

[51] *Id.* at ¶ 18 ("Defendants required that Plaintiffs verify Defendants' agreement or offer to pay, and the percentage of the bill Defendants would pay be referring to Defendants' web portal, iLinkBlue."); *id.* at ¶ 19 ("Defendants' statements regarding what Defendants agreed or offered to pay and percentage of payment as stated on the web portal or otherwise, constitute affirmative representations regarding payment . . . ."); *id.* at ¶ 20 ("With iLinkBlue . . . Defendants communicated to Plaintiffs before Plaintiffs provided medical services . . . ."); *id.* at ¶ 23 ("Plaintiffs relied upon, and were entitled to rely upon, to their detriment, Defendants' web portal and other statements made by Defendants, whether oral or otherwise, regarding Defendants' agreement or offer to pay . . . .").
[52] *Blue Cross* I, R. Doc. 308 at 62, ¶ 236.
[53] *See* R. Docs. 567, 716, 729.
[54] *Blue Cross* I, R. Doc. 585 at 25.
[55] *Id.* at 25–26.

11

made with respect to damages for the remaining patients,[56] because any representations made on the verification telephone calls were not the cause-in-fact of the *Blue Cross* I Plaintiffs' treatment or billing decisions.[57] Further, the Court found any representations made on the verification telephone calls were not the legal cause of the *Blue Cross* I Plaintiffs' harm because Blue Cross Louisiana was not asked for the allowable amount and could not have foreseen that its not giving the *Blue Cross* I Plaintiffs the allowable amount would cause the *Blue Cross* I Plaintiffs harm with respect to their billing and treatment decisions.[58]

Because the Court has actually decided that the *Blue Cross* I Plaintiffs cannot recover under a theory of negligent misrepresentation, and the *Blue Cross* I Plaintiffs' claims in *Blue Cross* II arise from the same nucleus of operative fact as their claims in *Blue Cross* I, the *Blue Cross* I Plaintiffs are enjoined from pursuing any claims under the theory of negligent misrepresentation if: (1) there was no attempt to verify the patient's eligibility and benefits through a verification telephone call or iLinkBlue; (2) there was an attempt to verify the patient's eligibility and benefits through iLinkBlue, but the coverage summaries did not state the allowable amount or any other procedure-specific information; or (3) there was an attempt to verify the patient's eligibility and benefits through a verification telephone call, and the *Blue Cross* I Plaintiffs did not ask Blue Cross Louisiana for the allowable amount.

---

[56] *Blue Cross* I, R. Doc. 730. The Court held a jury trial on the *Blue Cross* I Plaintiffs' negligent misrepresentation cause of action with respect to damages relating to seven "bellwether" patients who were treated by the *Blue Cross* I Plaintiffs. The jury found in favor of the defendants. *See Blue Cross* I, R. Doc. 701. The testimony presented at trial, however, applied to the *Blue Cross* I Plaintiffs' negligent misrepresentation cause of action in its entirety, and was not specific to the seven bellwether patients. The Court relied on this testimony in its ruling on the Defendants' motion for summary judgment.
[57] *Blue Cross* I, R. Doc. 730.
[58] *Id.* at 19. The Court further found that providing the allowable amount was not within the scope of the Defendants' duty, and therefore, not providing the allowable amount could not be a breach of the Defendants' duty. *Id.*

12

d. Fraud

In *Blue Cross* II, the *Blue Cross* I Plaintiffs allege "Defendants made representations to [the *Blue Cross* I] Plaintiffs by inviting [them] to verify the terms of Defendants' offer or agreement to pay through viewing Defendants' web portal, iLinkBlue, and by providing information on Defendants' iLinkBlue web portal, and making statements orally and otherwise to [the *Blue Cross* I] Plaintiffs," Plaintiff relied upon these representations, and "Defendants intended to deceive [the *Blue Cross* I] Plaintiffs with Defendants' misrepresentations."[59]

In the Fifth Amended Complaint in *Blue Cross* I, the *Blue Cross* I Plaintiffs alleged Blue Cross Louisiana's representations "made by telephone or through computer generated information" were "fraudulent because the allowed amount that was actually used to calculate the payments was not that which complied with the definitions included in the Plan and were known by Defendants to be misleading."[60]

The *Blue Cross* I Plaintiffs voluntarily dismissed with prejudice their fraud claim in *Blue Cross* I on October 22, 2015.[61] Voluntary dismissals with prejudice ordinarily are "deemed a final adjudication on the merits for res judicata purposes on the claims asserted or which could have been asserted in the suit."[62] "To have a preclusive effect on specific issues or facts, however, a voluntary dismissal also must be accompanied by specific findings sufficient for a subsequent court to conclude that certain matters are

---

[59] R. Doc. 8-5, at 9, ¶¶ 49–51.
[60] *Blue Cross* I, R. Doc. 308 at 64, ¶¶ 246–47.
[61] *Blue Cross* I, R. Docs. 449, 450 ("After a thorough review of the law, facts, and record related to the allegation, the *Blue Cross* I Plaintiffs believe that it is in the best interest of fairness and judicial economy to dismiss with prejudice Count VIII of the Fifth Amended Complaint.").
[62] *Motrade v. Rizozaan, Inc.*, No. 95-6545, 1998 WL 10813, at *5 (S.D.N.Y. Mar. 11, 1998) (quoting *Israel v. Carpenter*, 120 F.3d 361, 365 (2d Cir. 1997)).

13

actually decided."[63]

The Court did not issue findings when it granted the *Blue Cross* I Plaintiffs' motion to voluntarily dismiss the Plaintiff's fraud claim.[64] As a result, the *Blue Cross* I Plaintiffs' voluntary dismissal of their fraud claim has no preclusive effect, and the Court will not enjoin the *Blue Cross* I Plaintiffs from pursuing a fraud claim in *Blue Cross* II.

The Court has closely tailored its injunctive relief to apply only to those issues decided in its rulings on Blue Cross Louisiana's motions for summary judgment in *Blue Cross* I.[65] This injunction does not prevent the *Blue Cross* I Plaintiffs from pursuing in state court any claims that may exist against Blue Cross Louisiana that fall outside of the issues decided by this Court.

## CONCLUSION

**IT IS ORDERED** that Blue Cross Louisiana's motion for preliminary and permanent injunctive relief pursuant to 28 U.S.C. § 2283 with respect to the *Blue Cross* I Plaintiffs' claims for breach of oral contract, detrimental reliance, negligent misrepresentation, and fraud is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** that the Center for Restorative Breast Surgery, L.L.C. and St. Charles Surgical Hospital are enjoined from making claims related to the provision of medical services to patients insured by Anthem Blue Cross and Blue Shield of Ohio, Anthem Blue Cross and Blue Shield of Virginia, Anthem BlueCross BlueShield of

---

[63] *Id.* (citing *Schenk v. Mine Mgmt. Co.*, 1997 WL 31400, *7 (N.D.N.Y. Jan. 23, 1997) ("Dismissals with prejudice unaccompanied by findings have no preclusive effect.")); *see also Rose v. Bourne*, 172 F. Supp. 536 (S.D.N.Y. 1959) ("[W]ithout findings, the actual or potential determination of the issues in the dismissed suit will not be effective by way of collateral estoppel on the decision of other causes of action.").
[64] *See Blue Cross* I, R. Doc. 450. The order on the *Blue Cross* I Plaintiffs' motion stated "Considering the above and foregoing motion, it is hereby ordered that the *Blue Cross* I Plaintiffs' Ex Parte Motion to Dismiss Count VIII of the Fifth Amended Complaint with prejudice is hereby granted." *Id.*
[65] *See Liberty Mut. Ins. Co. v. Gunderson*, 387 Fed. App'x 480, 487 (5th Cir. 2010) (upholding the grant of injunctive relief under the relitigation exception because "the district court closely tailored its injunctive relief to apply only to those issues decided in the partial summary judgment").

California, Anthem BlueCross BlueShield of Colorado, Anthem BlueCross BlueShield of Connecticut, Anthem BlueCross BlueShield of Kentucky, Anthem BlueCross BlueShield of Maine, Anthem BlueCross BlueShield of Mississippi, Anthem BlueCross BlueShield of Nevada, Anthem BlueCross BlueShield of Wisconsin, Anthem Health Plans of Maine, Inc., Anthem Health Plans of Virginia, Inc., Anthem Health Plans, Inc., Anthem Plans of Maine, Inc., BCBSM, Inc., Blue Cross & Blue Shield of Illinois, Blue Cross & Blue Shield of Mississippi, Blue Cross and Blue Shield of Alabama, Blue Cross and Blue Shield of Florida, Blue Cross and Blue Shield of Nebraska, Inc., Blue Cross and Blue Shield of North Carolina, Blue Cross and Blue Shield of Oklahoma, Blue Cross and Blue Shield of Tennessee, Blue Cross and Blue Shield of Texas, Blue Cross Blue Shield CareFirst, Blue Cross Blue Shield Federal, Blue Cross Blue Shield Hawaii Medical Service Association, Blue Cross Blue Shield of Connecticut, Blue Cross Blue Shield of Hawaii, Blue Cross Blue Shield of Idaho, Blue Cross Blue Shield of Illinois, Blue Cross Blue Shield of Kentucky, Blue Cross Blue Shield of Massachusetts, Blue Cross Blue Shield of New York, Blue Cross of California, BlueCross BlueShield of Arkansas, BlueCross BlueShield of California, BlueCross BlueShield of California Directors Guild of America, BlueCross BlueShield of Colorado, BlueCross BlueShield of Delaware, BlueCross BlueShield of Georgia, BlueCross BlueShield of Hawaii, BlueCross BlueShield of Idaho, BlueCross BlueShield of Indiana, BlueCross BlueShield of Iowa, BlueCross BlueShield of Kentucky, BlueCross BlueShield of Louisiana Office of Group Benefits, BlueCross BlueShield of Maine, BlueCross BlueShield of Maryland, BlueCross BlueShield of Massachusetts, BlueCross BlueShield of Michigan, BlueCross BlueShield of Minnesota, BlueCross BlueShield of Missouri, BlueCross BlueShield of Montana, BlueCross BlueShield of New Jersey, BlueCross BlueShield of New Mexico, BlueCross BlueShield of New York, BlueCross BlueShield of

Rochester, New York, BlueCross BlueShield of Western New York, BlueCross BlueShield of North Carolina, BlueCross BlueShield of Ohio, BlueCross BlueShield of Oregon, BlueCross BlueShield of Pennsylvania, BlueCross BlueShield of Rhode Island, BlueCross BlueShield of South Carolina, BlueCross BlueShield of Tennessee, BlueCross BlueShield of Utah, BlueCross BlueShield of Vermont, BlueCross BlueShield of Virginia, BlueCross BlueShield of West Virginia, BlueCross BlueShield of Mountain West Virginia, BlueCross BlueShield of Washington, CareFirst BlueCross BlueShield of Maryland, Community Insurance Company, Empire BlueCross BlueShield of New York, Federal BlueCross BlueShield, HighMark Blue Shield, Highmark BlueCross BlueShield of Pennsylvania, Highmark BlueCross BlueShield of West Virginia, Highmark Inc, Horizon BlueCross BlueShield of New Jersey, Keystone Health Plan East BlueCross BlueShield of Pennsylvania, Louisiana Health Service & Indemnity Company, Premera Blue Cross, Premera BlueCross BlueShield of Washington, Regence Blue Shield, Regence BlueCross BlueShield of Oregon, Regence BlueCross BlueShield of Utah, Regence BlueCross BlueShield of Washington, Wellmark BlueCross BlueShield of Iowa, or Wellmark, Inc. for the following claims:

1. Any claim for breach of oral contract the value of which exceeds $500 in which they allege an oral contract existed by virtue of telecommunication and/or accessing the iLinkBlue web portal;

2. Any claim under the theory of detrimental reliance for which: (1) there was no attempt to verify the patient's eligibility and benefits through a verification telephone call or iLinkBlue; (2) there was an attempt to verify the patient's eligibility and benefits through iLinkBlue, but the verification page did not provide the amount the insurer will pay for a specific procedure; or (3) there was an attempt to verify the patient's eligibility and benefits through a verification telephone call, but a disclaimer stating there was "no guarantee of payment" was played at the beginning of the call, and the *Blue Cross* I Plaintiffs did not request further assurance or clarification about the amount of the allowable charge; and

3. Any claim under the theory of negligent misrepresentation for which: (1) there was

no attempt to verify the patient's eligibility and benefits through a verification telephone call or iLinkBlue; (2) there was an attempt to verify the patient's eligibility and benefits through iLinkBlue but the coverage summaries did not state the allowable amount or any other procedure-specific information; or (3) there was an attempt to verify the patient's eligibility and benefits through a verification telephone call, but the *Blue Cross* I Plaintiffs did not ask Blue Cross Louisiana for the allowable amount.

**IT IS FURTHER ORDERED** that Blue Cross Louisiana's motion for preliminary and permanent injunctive relief pursuant to 28 U.S.C. § 2283 with respect to the *Blue Cross* I Plaintiffs' fraud claim is **DENIED**.

**New Orleans, Louisiana, this 23rd day of May, 2017.**

**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**